**MATERIAL SUPPLY INTERNATIONAL, INC., Appellant/Cross–Appellee,**

v.

**SUNMATCH INDUSTRIAL CO., LTD., Appellee/Cross–Appellant.**

No. 97–7092.
**Consolidated with No. 97–7093.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1998.

Decided July 10, 1998.

Larry Klayman argued the cause for appellant/cross-appellee, with whom Paul J. Orfanedes was on the briefs.

Louis S. Mastriani argued the cause for appellee/cross-appellant, with whom Michael L. Doane was on the briefs.

Before: EDWARDS, Chief Judge; GINSBURG and SENTELLE, Circuit Judges.

GINSBURG, Circuit Judge:

Material Supply International, Inc., an Oregon corporation, sells pneumatic power tools. Sunmatch Industrial Co., Ltd., a Taiwanese company, manufactures and exports pneumatic tools. Both claim ownership of the SUNTECH trademark for pneumatic tools. The Trademark Trial and Appeal Board (TTAB) ruled in favor of Sunmatch. The district court held a bench trial on MSI's challenge to the ruling of the TTAB and submitted the other issues to a jury. Both parties appeal from various of the district court's decisions.

## I. Background

The key issue in the case is which party first used the SUNTECH trademark. Daniel L.S. Chen, president and general manager of Sunmatch, testified that he created the SUNTECH mark in March 1985. In April of that year Sunmatch applied to register the SUNTECH mark in Taiwan; its application was granted in November. Between April and August Sunmatch used the mark in advertisements, in catalogues, on letterhead, on sample tools, at a display at the National Hardware Show in Chicago, and in meetings after the show with potential distributors, including MSI. In August Chen traveled to Oregon to meet with Chuck Minnick, then the president of MSI, and they began negotiations regarding Sunmatch's sale of pneumatic tools to MSI. In November 1985 the parties entered into an Exclusive Sales Agreement under which Sunmatch would manufacture pneumatic tools and MSI would "represent and sell [the tools] on an exclusive basis for the entire North American continent and the State of Hawaii." The Agreement states that

> [t]he Supplier [Sunmatch] agrees to give the Agent [MSI] exclusive rights to *sales* of all *Suntech Pneumatic Tools* and accessories for the period of this contract with the exception of special tools now being supplied to AIM Corporation.

(Emphases in original.)

In ·October 1985 MSI began importing, advertising, and selling SUNTECH tools to various customers. In 1990 the relationship between MSI and Sunmatch began to deteriorate. MSI discovered that Sunmatch was advertising SUNTECH tools in the United States and became concerned about Sunmatch's sales of private label tools in the U.S., which MSI contends caused it to lose sales and distributors.

In January 1990, without Sunmatch's knowledge, MSI applied to the Patent and Trademark Office to register the SUNTECH trademark, and in October 1991 the PTO issued the registration. Sunmatch petitioned the TTAB for cancellation of MSI's mark. In 1994 the TTAB granted summary judgment in favor of Sunmatch and canceled MSI's registration; the only affidavit MSI submitted did not raise a dispute over any material fact because it was not based upon the affiant's personal knowledge of the events surrounding the beginning of the relationship between the two companies. *See Sunmatch Indus. Co. v. Material Supply Int'l, Inc.*, Cancellation No. 20,482, at 16–17 (T.T.A.B.1994) (citing Federal Rule of Civil Procedure 56(e)).

In May 1994 MSI sued Sunmatch and Mr. Chen pursuant to 15 U.S.C. § 1071(b)(1), which authorizes a party "dissatisfied" by a decision of the TTAB to bring a civil action in district court. In addition, MSI sought a declaratory judgment that it owned, and an injunction against Sunmatch using, the SUNTECH mark. MSI also sought damages from Sunmatch for trademark infringement

and unfair competition under the Lanham Act, unfair competition under state law, breach of contract, breach of fiduciary duty, fraud upon the TTAB, and fraud upon MSI. Sunmatch counterclaimed for trademark infringement and unfair competition under the Lanham Act, fraud upon the PTO, unfair competition under state law, and breach of contract.

The district court simultaneously held a bench trial of MSI's challenge to the decision of the TTAB and a jury trial of all the other claims in the case. After the close of evidence but before charging the jury the court upheld the decision of the TTAB. The court determined that Sunmatch owned the SUNTECH mark principally because it was the first to use it. Based upon this ruling, the court also dismissed, pursuant to Rule 50(a) (judgment as a matter of law), MSI's claims for trademark infringement and unfair competition. The court informed the jury that Sunmatch owned the mark and submitted the remaining claims for the jury's consideration.

The jury upheld MSI's claim against Sunmatch for breach of fiduciary duty, for which it awarded MSI $50,000 in compensatory and $100,000 in punitive damages, but it rejected MSI's claims against Sunmatch for breach of contract and for fraud. The jury upheld Sunmatch's counterclaims against MSI for trademark infringement, fraud upon the PTO, and breach of contract, for which it awarded Sunmatch $908,500, but it rejected Sunmatch's claim of unfair competition under both the Lanham Act and state law. Both parties appealed.

## II. Analysis

On appeal MSI argues that the district court (1) violated its Seventh Amendment right to a jury trial when the court itself decided that Sunmatch owns the SUNTECH mark and so informed the jury; and (2) erred in the course of rejecting MSI's challenge to the TTAB decision that Sunmatch owned the SUNTECH mark, by (a) placing upon MSI the burden of proof, (b) admitting into evidence various documents showing Sunmatch's first use of the mark, (c) deciding that there was "clear and convincing" proof of the date Sunmatch first used the SUN-

TECH mark, and (d) giving insufficient weight to MSI's evidence regarding customer perception. MSI also challenges the district court's rulings (3) denying MSI's posttrial motion for judgment upon, or for a new trial of, Sunmatch's counterclaims for trademark infringement, breach of contract, and fraud upon the PTO; (4) declining to eliminate or reduce the jury's award of MSI's profits to Sunmatch; (5) granting Sunmatch's motion to amend its answer in order to assert a statute-of-limitations defense while denying MSI's motion to amend its answer in order to assert assignment as a defense; (6) instructing the jury regarding Sunmatch's statute-of-limitations defense; and (7) denying MSI's motion to compel discovery.

For its part Sunmatch argues that the district court erred in denying Sunmatch's motions (1) for judgment as a matter of law upon MSI's claim for breach of fiduciary duty; (2) to vacate or reduce the jury's award of damages to MSI; and (3) to award Sunmatch (a) enhanced damages, (b) costs, and (c) attorney's fees under the Lanham Act; and (4) for prejudgment interest.

### A. MSI's Right to a Jury Trial

As noted above, the district court itself resolved MSI's challenge to the decision of the TTAB. At the close of evidence but before the case was submitted to the jury, the court upheld the TTAB's decision that Sunmatch owned the SUNTECH mark and informed the jury of its decision as follows:

> I have decided the appeal affirming the decision of the TTAB ... which found in favor of the defendant in this case. From my decision two facts flow. One, Sunmatch is the owner of the trademark and, two, MSI, the plaintiff in this action, did not own the trademark at the time it filed its application for registration for the Suntech trademark.

While the jury was deliberating the court placed on the record its findings of fact and conclusions of law relevant to its decision affirming the TTAB. The court indicated that it found many of the witnesses for both sides to be less than truthful and that it "closely scrutinized the manner and content of the testimony and applied what all jurors

are required to use and that is common sense." The court found that Sunmatch was the first to use the SUNTECH mark and therefore it held that Sunmatch owned the mark. The court then outlined the "consequences" of that decision:

> The factual issue[s] of ownership and first use have a presence of [sic] other aspects of this case as it proceeds to the jury in that the parties have brought jury triable claims that implicate this issue. But as in any case in which a decision for the court [has an] impact on what remains for the jury to decide, this court recognizes that pursuant to Rule 50, the determination of an issue against a party may re-configure what remains for the jury to decide.
>
> Having determined the fact de novo that first use renders the defendant [Sunmatch] the owner and rightful registrant of the trademark in this case as a matter of law, this issue cannot be redetermined by the jury and consequently the plaintiff's claims are affected as we have already discussed on the record, dropping certain things out and eliminating certain things for the jury's decision-making.

■ MSI contends that the district court violated its right to a jury trial when the court decided that Sunmatch owned the trademark before submitting the parties' other claims to the jury. We agree. The Seventh Amendment to the Constitution of the United States provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

As a general matter the Seventh Amendment affords the right to a jury trial "in those actions that are analogous to 'Suits at common law' "—that is, "suits brought in the English *law* courts"—and not in actions "analogous to 18th-century cases tried in courts of equity or admiralty." *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (emphasis in original).

■ Most important for this case, the Supreme Court has held that "[w]hen legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.' " *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974)); *see Dairy Queen, Inc. v.* Wood, 369 U.S. 469, 472–73, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). In such a case the jury first must resolve any common issue of fact; the district court then can resolve those claims that are for it to determine. *See Lytle*, 494 U.S. at 556 n. 4, 110 S.Ct. 1331; *Dairy Queen*, 369 U.S. at 472–73, 82 S.Ct. 894.

■ In this case the parties do not dispute that the district court was correct in itself trying MSI's challenge to the decision of the TTAB and in submitting all of MSI's other claims and Sunmatch's counterclaims to the jury. *See Dairy Queen*, 369 U.S. at 476–77, 82 S.Ct. 894 (claims for damages based upon breach of contract and trademark infringement sound in law). The dispute is over the sequence in which the court and the jury should have proceeded, considering that MSI's challenge to the decision of the TTAB and all of Sunmatch's claims against MSI involved the common legal issue of which party owned the SUNTECH trademark, resolution of which in turn depended upon the common factual issue of which party first used the mark. The teaching of the Supreme Court cases cited in the preceding paragraph is that the district court should have let the jury first decide this common question of fact and then itself decided the TTAB appeal based upon the jury's resolution of that question.

■ Sunmatch contends nonetheless that because, in the event, the district court resolved MSI's challenge to the TTAB decision before submitting the case to the jury, MSI was barred by the doctrine of issue preclusion from re-litigating the factual question of first use. The Supreme Court rejected a

similar contention in *Lytle*, stating that "in cases involving a wrongful denial of a petitioner's right to a jury trial" the Court has "never accorded collateral-estoppel effect to the trial court's factual determinations." 494 U.S. at 552–53, 110 S.Ct. 1331. As the Court explained:

> [T]he purposes served by collateral estoppel do not justify applying the doctrine in this case. Collateral estoppel protects parties from multiple lawsuits and the possibility of inconsistent decisions, and it conserves judicial resources. Application of collateral estoppel is unnecessary here to prevent multiple lawsuits because this case involves one suit in which the plaintiff properly joined his legal and equitable claims.

*Id.* at 553, 110 S.Ct. 1331 (citation omitted).

Next Sunmatch asserts that the district court's action must not violate the Seventh Amendment because otherwise courts could never dismiss claims based upon Rules 12, 50, or 56. Sunmatch misses the point. Of course the trial court may dismiss claims based upon those rules—but only if it can do so as a matter of law. In this case the court, acting as the finder of fact, evaluated the demeanor and determined the credibility of witnesses, balanced the evidence, and found that Sunmatch first used the mark. By resolving this factual issue common to the claims tried to the court and those tried to the jury, the court violated MSI's right to a jury trial.

Upon remand MSI is entitled to a jury trial of all causes of action that entail the question which party owned the SUNTECH trademark, namely, MSI's challenge to the TTAB decision, and its claims for trademark infringement and unfair competition under the Lanham Act and unfair competition under state law; and Sunmatch's claims for trademark infringement and unfair competition under the Lanham Act, fraud upon the PTO, and unfair competition under state law. Sunmatch's claim for breach of contract also must be retried because it too implicates the question of ownership. Sunmatch has offered two theories in support of this claim, both of which depend upon ownership of the mark: First, in its complaint Sunmatch alleged that "[b]y claiming ownership of Sunmatch's trademark SUNTECH and filing a U.S. application therefor, [MSI] breached its duty under the sales agreement." Second, in its brief Sunmatch contends that "when MSI began to purchase pneumatic tools from other suppliers and place the SUNTECH trademark on those products, it was clearly violating the Agreement." The issue of who owned the mark is relevant under either theory, and therefore the claim must be retried.

Finally, we note that MSI does not seek retrial based upon the Seventh Amendment for its claims for breach of fiduciary duty, breach of contract, and fraud upon MSI, the latter two of which the jury rejected. (During the trial MSI withdrew its claim of fraud upon the TTAB.) Accordingly, these claims will not be retried upon remand, and we need not consider whether they implicate the issue of ownership. We turn now to the arguments that the parties need to have resolved in order to retry the claims that we remand to the district court.

### B. Burden of Proof in MSI's Challenge to the TTAB Decision

MSI argues that the district court incorrectly placed upon it the burden of proof in its challenge to the decision of the TTAB. A party to a cancellation proceeding who is dissatisfied with a decision of the TTAB has two options: First, the party may appeal to the United States Court of Appeals for the Federal Circuit. 15 U.S.C. § 1071(a)(1). Second, the party may "have remedy by a civil action" in district court. *Id.* § 1071(b)(1). With respect to these two options, a leading treatise states:

> Congress gave such alternate remedies of review because each possessed its own unique advantages. If appeal is made to the Federal Circuit, the case proceeds on a closed record and no new evidence is permitted. But if review is sought in a federal [district] court, review is a form of "de novo" scrutiny and new evidence is permitted.

3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 21:20, at 21–24 (4th ed.1997); *see also* 15 U.S.C.

§ 1071(b)(3) (in district court the record before the TTAB "shall be admitted on motion of any party ... without prejudice to the right of any party to take further testimony"). Although courts sometimes refer to the district court's review of the TTAB's decision as a "*de novo*" proceeding, *see, e.g., Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 391 (7th Cir.1992); *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.*, 332 F.2d 216, 218 (2d Cir.1964), that is something of a misnomer:

> While district court review is called "de novo" because new evidence may be introduced, it is a unique procedure because unlike a true de novo proceeding, findings of fact made by the [TTAB] are given great weight and not upset unless new evidence is introduced which carries thorough conviction.

3 McCarthy, *supra,* § 21:21, at 21–26; *see Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 40 (D.C.Cir.1956) (adopting standard of review for decisions of Patent Office set forth in *Morgan v. Daniels*, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657 (1894), *i.e.,* finding of fact made by TTAB "must be accepted as controlling, unless the contrary is established by evidence 'which, in character and amount carries thorough conviction' "); *accord, Spraying Sys.*, 975 F.2d at 391; *Coach House Restaurant, Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir.1991); *Wells Fargo & Co. v. Stagecoach Properties, Inc.*, 685 F.2d 302, 306 (9th Cir.1982); *Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co.*, 335 F.2d 72, 74 (5th Cir.1964); *Wilson Jones Co.*, 332 F.2d at 218; *Century Distilling Co. v. Continental Distilling Co.*, 106 F.2d 486, 489 (3d Cir.1939); *see also* 3 McCarthy, *supra,* § 21:22, at 21–27 ("vast majority of courts" apply the thorough conviction standard); 1 Jerome Gilson & Jeffrey M. Samuels, *Trademark Protection & Practice* § 3.05[4](b)(ii), at 3–200 (1997) (same).

■ In this case, however, the TTAB did not resolve any disputed issue of fact. Rather, it entered summary judgment in favor of Sunmatch because MSI failed to raise a material issue of fact by submitting an affidavit based upon the affiant's personal knowledge.

As the Seventh Circuit pointed out in *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d at 391, "the thorough conviction standard cannot apply to the TTAB's grant of summary judgment." When the TTAB grants summary judgment it does not make findings of fact; rather, it applies Federal Rule of Evidence 56 and concludes as a matter of law that there are no material issues of fact in dispute. *See id.* at 391–92; *see also Sunmatch Indus. Co. v. Material Supply Int'l, Inc.*, Cancellation. No. 20,482, at 4–5 (T.T.A.B.1994). (applying Rule 56 in this case); *cf.* 37 C.F.R. § 2.116(a) ("Except as otherwise provided, and wherever applicable and appropriate, procedure and practice in inter partes proceedings shall be governed by the Federal Rules of Civil Procedure"). Moreover, courts apply the thorough conviction standard to the TTAB's findings of fact largely in deference to the TTAB's expertise in handling trademark cases. There is no reason, however, for the district court to defer to the TTAB when that body grants summary judgment; the district court is just as able as the TTAB to determine an issue of law. We conclude that because the TTAB granted summary judgment to Sunmatch on the issue of who owned the SUNTECH trademark, the district court upon remand should review the decision of the TTAB based upon a true *de novo* standard, as it would any question of law.

■ As the petitioner seeking cancellation before the TTAB, Sunmatch had the burden of proving by a preponderance of the evidence that it owned the SUNTECH mark. *See, e.g., Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed.Cir.1989); *Massey Junior College, Inc. v. Fashion Inst. of Tech.*, 492 F.2d 1399, 1402–04, 181 U.S.P.Q. 272 (1974); *see also* 3 McCarthy, *supra,* § 20:64, at 20–106 (petitioner to cancel must rebut presumption of validity by preponderance of evidence). Because the TTAB decided against MSI and MSI sought review of that decision in district court, we think MSI had the burden of going forward, that is, of submitting to the court evidence or argument to counter the decision of the TTAB. Nevertheless, because Sunmatch had the burden of proof before the

TTAB and because the district court must review the TTAB's decision *de novo,* Sunmatch must bear the burden of persuasion in district court.

### C. Motions to Amend

MSI argues that the district court abused its discretion by (1) a few weeks before trial granting Sunmatch's motion to amend its answer to include a statute-of-limitations defense to MSI's claim for breach of contract; and (2) at the close of evidence denying MSI's motion to amend its answer to include a defense of assignment. We need not reach the second issue, however, because upon remand MSI will have another opportunity to seek leave to amend its answer prior to the retrial of Sunmatch's claims against MSI. *See Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339, 345 (D.C.Cir.1997) (stating that upon remand Department may petition to amend); 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1488, at 655–57 (2d ed.1990).

■ Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (absent "any apparent or declared reason—such as undue delay, bad faith or ... undue prejudice to the opposing party" leave should be freely given). We review for an abuse of discretion the district court's decision to grant or deny a motion to amend. *See, e.g., Atchinson v. District of Columbia,* 73 F.3d 418, 426 (D.C.Cir.1996).

■ We do not see how MSI can maintain that the district court abused its discretion in permitting Sunmatch to amend its answer to add the statute-of-limitations defense. MSI conclusorily claims it was prejudiced by the delay, but it does not say how and no prejudice is apparent. MSI had plenty of notice: the court granted Sunmatch's motion on January 19 and the trial did not begin until February 5; moreover, Sunmatch had mentioned the statute-of-limitations defense the previous November in a filed memorandum regarding choice of law. Although MSI points out that discovery was closed it does not identify any discovery it required in order to meet the statute-of-limitations defense.

■ MSI also argues that Sunmatch waived its statute-of-limitations defense by failing to raise the defense in its original answer. This argument confuses "waiver" and "forfeiture."

> A Rule 15 amendment, if allowed by the trial court, will cure any problem of timeliness associated with forfeiture [of a statute-of-limitations defense]. However, if a party "waives," *i.e.,* intentionally relinquishes or abandons an affirmative defense, no cure is available under Rule 15.

*Harris,* 126 F.3d at 343 n. 2. There is no indication that Sunmatch ever intentionally relinquished the defense; therefore its request for an amendment cured its failure to include the defense in its original answer. We conclude that the court properly granted Sunmatch's motion.

### D. Jury Instruction Regarding Statute of Limitations

MSI next argues that the district court incorrectly instructed the jury regarding when the statute of limitations began to run on its breach of contract claim. In its initial charge to the jury the district court stated:

> For purposes of the parties' breach of contract ... claims, you must rule against either party if you find that it waited more than three years after any breach of contract ... before it raised the claim.

During deliberations the jury sent the court a note that stated in part:

> At what point in time does the clock start ticking for the statute of limitations on the breach of contract? I.e. a) At the time the breach occurred? b) At the time a party became aware of the breach? c) At the time damages were incurred?

The court answered that the statute of limitations begins to run at the time a party discovers the breach.

■ District of Columbia law governs the issue of the proper statute of limitations in

this case. *See A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C.Cir.1995) (in diversity case federal court looks to forum state's choice-of-law rules; D.C. treats statute of limitations as procedural and applies its own rule); *cf. Sun Oil Co. v. Wortman*, 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (Supreme Court has "reject[ed] the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws"). The general rule in the District is that a claim for breach of contract accrues "when the contract is first breached." *Capitol Place I Assoc. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 198 (D.C.1996).

■ MSI asserts that the district court should have instructed the jury that "the statute of limitations begins to run from [the] date of the breach, or [the] date of the termination of the contract, whichever is later." For this proposition it provides a case citation ungarnished by any reasoning. *See Computer Data Sys., Inc. v. Kleinberg*, 759 F.Supp. 10 (D.D.C.1990). The District of Columbia Court of Appeals does recognize that there may be situations in which the breach occurs only upon the completion of the contract. For example, where the claim is based upon the breach of an implied warranty that equipment the defendant installed would operate properly, the breach does not occur until the installation (and hence performance of the contract) was completed and the equipment did not, in fact, work. *See Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826, 830 & n. 2 (D.C.1972). Applying such a rule, however, requires an analysis of the facts of the particular case in order to determine whether the breach occurred at the time of completion of the contract or at some other time. MSI suggests no reason, however, why it is entitled to an instruction that Sunmatch's breach occurred at termination of the Agreement and we do not see any analogy here to the cases involving the breach of an implied warranty. Therefore, we adhere to the general rule that the cause of action accrues and the statute of limitations begins to run when the defendant breaches the contract.

Whether the district court erred by instructing the jury that the cause of action accrued at the time of discovery rather than at the time of breach, we need not decide because any error was certainly harmless. *See* Fed.R.Civ.P. 61. Running the statute of limitations from discovery could not have given MSI less time to file because obviously a party can discover a breach only when it occurs or later. Not surprisingly, therefore, MSI does not identify any prejudice it suffered from the instruction—other than to say that it must have been prejudiced because the jury rejected its claim, which is circular.

### E. MSI's Motion to Compel

■ MSI asserts that the district court abused its discretion by denying as untimely MSI's motion to compel Sunmatch to produce evidence regarding Sunmatch's private label sales. MSI contends that if it had had this information for trial it could have proven additional damages arising from Sunmatch's breach of fiduciary duty.

The scheduling order governing pretrial procedures provided that discovery had to be completed by April 1, 1995, dispositive motions were due by May 1, and "[a]ll other motions" were due by September 11. MSI filed its motion to compel on September 11 and the court held it untimely because that was after the close of discovery. We think the court was well within its discretion to interpret its order as requiring a motion to compel discovery to be made within the discovery period.

### F. Breach of Fiduciary Duty

■ Sunmatch argues that the district court erred in denying its motion for judgment as a matter of law, or in the alternative for a new trial, on MSI's claim for breach of fiduciary duty. Our review is *de novo*; we ask "whether the evidence was sufficient for a reasonable jury to have reached the verdict." *Kirkland v. District of Columbia*, 70 F.3d 629, 635 (D.C.Cir.1995).

■ Sunmatch mounts four attacks upon the decision of the district court not to grant the motion. Sunmatch's first argument is that under the relevant law (namely, that of

Oregon) a manufacturer does not have a fiduciary duty to its dealer(s) unless they had a "special relationship," and it claims that MSI did not present sufficient evidence of such a "special relationship." MSI's response is that Sunmatch is bound by the jury instruction the parties jointly submitted to the district court, which did not mention the need for a special relationship. In its reply brief, Sunmatch makes no attempt to respond to MSI's point. In these circumstances, although we may doubt that there is a special relationship and therefore a fiduciary duty here, we can hardly conclude that Sunmatch has carried its burden of demonstrating that the judgment of the district court is in error, and hence we proceed upon the assumption that Sunmatch owed a fiduciary duty to MSI.

■ Sunmatch's other arguments are all closely related: Sunmatch argues that as a principal it had the right to compete with its agent MSI by selling private label tools unless the Agreement expressly stated otherwise; that assuming it had a duty not to interfere with MSI's sales of SUNTECH tools the evidence fails to support the conclusion that it breached that duty; and that the jury's verdict that Sunmatch breached a fiduciary duty it owed to MSI is inconsistent with its verdict that Sunmatch did not breach the Agreement because both claims were based upon Sunmatch's sales of private label tools.

Sunmatch's reasoning misses the point of MSI's claim for breach of fiduciary duty. According to MSI's theory, even if under the Agreement Sunmatch could legitimately sell private label tools in North America and Hawaii, the Agreement clearly gave MSI the exclusive right "to represent and sell [SUNTECH tools]" for a specific period of time in that territory, and Sunmatch interfered with that exclusive right by using the SUNTECH mark to solicit private label sales, thereby diverting to it sales that would have gone to MSI. In other words, although Sunmatch might have had the right to compete with MSI by selling private label tools, the Agreement is express that Sunmatch did not have the right to exploit the SUNTECH mark in North America in order to make those sales.

Moreover, contrary to Sunmatch's argument, there is sufficient evidence to support MSI's theory: Sunmatch used the SUN-TECH name in advertisements, catalogues, business cards, and sample tools which it circulated in the United States in order to solicit sales of private label tools. Although there is, as Sunmatch points out, countervailing evidence, there is sufficient evidence in the record for a reasonable jury to conclude that Sunmatch used the SUNTECH mark to attract customers in North America to whom it would sell private label tools.

■ Finally, the jury's verdicts with respect to breach of contract and breach of fiduciary duty were not inconsistent because, assuming Sunmatch had a right to sell private label tools, the jury could find that Sunmatch breached its putative fiduciary duty by using the SUNTECH logo to divert to itself private label sales that should have gone to MSI. Accordingly, we hold that Sunmatch was not entitled to judgment as a matter of law, or in the alternative, to a new trial.

### G. Sunmatch's Challenge to the Award of Damages

The jury awarded MSI $50,000 in compensatory damages and $100,000 in punitive damages for Sunmatch's breach of fiduciary duty. Sunmatch argues that the district court should have granted it judgment as a matter of law with respect to the award of damages. In the alternative, Sunmatch contends that the district court abused its discretion in failing to grant remittitur of the damages.

#### 1. Judgment as a matter of law

■ As noted above, we review *de novo* an order denying judgment as a matter of law; thus, we ask here whether there was sufficient evidence for a reasonable jury to have awarded compensatory or punitive damages. With respect to the latter, Sunmatch argues that no reasonable jury could conclude that Sunmatch's actions were wanton, malicious, or criminally indifferent because it reasonably believed that under the Agreement it could make private label sales. As we have seen, however, under MSI's theory

of breach of fiduciary duty it does not matter whether the Agreement allowed Sunmatch to sell private label tools. The Agreement gave MSI the exclusive right "to represent and sell[SUNTECH tools]" in North America and Hawaii. A reasonable jury could have concluded based upon the evidence presented at trial that MSI maliciously used the SUNTECH trademark in that territory—which it must have known it had no right to do—specifically in order to divert sales from MSI to itself. Accordingly, Sunmatch was not entitled as a matter of law to a judgment vacating the jury's award of punitive damages.

■ With respect to the compensatory damages, Sunmatch argues that the $50,000 award must derive from MSI's claim that it spent $46,000 to replace eight sales representatives, that most of that sum went to pay salaried MSI employees to find replacement representatives, and that MSI would have incurred this expense in any event. There is no reason, however, to tie the $50,000 figure to MSI's claim for time spent replacing sales representatives just because the amounts are similar. MSI claimed and put on evidence of other damages as well—for interest charges incurred to carry excess inventory, and for lost profits and goodwill. Because a reasonable jury surely could have awarded MSI $50,000 in compensatory damages we reject Sunmatch's argument for judgment as a matter of law.

## 2. Remittitur

■ In the alternative, Sunmatch argues that the district court abused its discretion in declining to remit the jury's award of compensatory and punitive damages. *See, e.g., Hooks v. Washington Sheraton Corp.,* 578 F.2d 313, 316 (D.C.Cir.1977). Sunmatch's claim for remittitur of the compensatory damages appears to be the same as its claim for judgment as a matter of law, which we have already rejected. Sunmatch argues that the punitive damages should be reduced because they are "excessive." On the contrary, precedent establishes that the punitive damages are not excessive in relation to the harm to MSI. *See Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23–24, 111 S.Ct. 1032,

113 L.Ed.2d 1 (1991) (upholding award of punitive damages which were four times the amount of compensatory damages); *cf. BMW of North Am., Inc. v. Gore,* 517 U.S. 559, 582, 585–86, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (finding punitive damages of 500 times amount of actual harm to be constitutionally excessive). Therefore, we will not set aside or reduce the award.

## III. Conclusion

We hold as follows: (1) The district court violated MSI's Seventh Amendment right to a jury trial when it decided on the merits MSI's challenge to the TTAB decision before submitting the remainder of the case to the jury. (2) Upon remand the district court must review *de novo* the TTAB's grant of summary judgment to Sunmatch, which bears the burden of persuasion with respect to the issue of ownership of the SUNTECH mark. (3) The district court did not abuse its discretion when it granted Sunmatch's motion to amend its answer in order to assert a statute-of-limitations defense to MSI's claim for breach of contract. (4) Any error the district court may have made in instructing the jury about the statute of limitations for breach of contract was harmless. (5) The district court did not abuse its discretion in denying MSI's motion to compel discovery. (6) Sunmatch is not entitled to judgment as a matter of law or to a new trial on MSI's claim for breach of fiduciary duty. (7) Sunmatch is not entitled to judgment as a matter of law or to remittitur of the jury's award of compensatory and punitive damages. The judgment of the district court is affirmed with respect to MSI's claims for breach of contract, breach of fiduciary duty, fraud upon the TTAB, and fraud upon MSI.

Because of the Seventh Amendment violation, the following claims are remanded for a new trial: MSI's challenge to the decision of the TTAB, its claims for trademark infringement and unfair competition under the Lanham Act, and its claim for unfair competition under state law; Sunmatch's claims for trademark infringement and unfair competition under the Lanham Act, fraud upon the PTO, unfair competition under state law, and breach of contract.

The case is remanded to the district court for further proceedings consistent with this opinion.

*So ordered.*